(No. 32461.—

ELMER KRILE *et al.,* Appellees, *vs.* KIT SWINEY *et al.,* Appellants.

*Opinion filed November 20, 1952.*

E. C. EBERSPACHER, of Shelbyville, for appellants.

ARTHUR J. STEIDLEY, of Shelbyville, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

By this direct appeal, involving a freehold, defendants-appellants seek reversal of a decree of the circuit court of Shelby County quieting title of plaintiffs-appellees, as prayed in the complaint, and dismissing the counterclaim of defendants-appellants for partition and accounting.

The material facts are not in dispute. Louisa E. Elliott owned in fee simple at the time of her death on June 4, 1948, a sixty-acre tract of land in Shelby County and some lots in the city of Windsor, also in Shelby County. She died intestate leaving no child or children or descendants of deceased children, but leaving her surviving her husband, Willis A. Elliott, a sister, and numerous nieces, nephews, grand nieces and grand nephews, as her sole heirs-at-law. Letters of administration on her estate were issued March 23, 1949, being more than nine but less than ten months after her death, to one F. W. Bennett.

Willis A. Elliott, the surviving husband of Louisa E. Elliott, deceased, died intestate on November 24, 1949, less than ten months after letters of administration were issued on the estate of his deceased spouse, leaving no child or children or descendants of deceased children and no surviving spouse, but leaving Kit Swiney, Katherine Bottrell, Nell M. Rice, Gwen E. Kircher, Stella Webb Albert, and Gretchen Lee Elam, the descendants of deceased brothers and sisters, as his only heirs-at-law. At the time of his death, no waiver of dower or election to take dower in the real estate of which his wife died seized had been filed.

Both Louisa E. Elliott and Willis A. Elliott were incompetent, and, at the time of the death of each, F. W. Bennett was the conservator of their estate and was the administrator of the estate of Louisa E. Elliott, deceased.

On December 10, 1949, sixteen days after the death of Willis A. Elliott, a sister and two of the nieces of Louisa E. Elliott, deceased, filed a complaint for partition of the real estate of which Louisa E. Elliott died seized, to which the remaining heirs-at-law of Louisa E. Elliott and F. W. Bennett, as administrator of her estate, were made parties defendant. None of the heirs-at-law of Willis A. Elliott, deceased, nor the administrator of his estate were made parties defendant thereto. A decree for partition and a decree for sale were entered in said proceedings on January 19, 1950. Thereafter, on February 11, 1950, Gretchen Lee Elam and Katherine Bottrell, two of the heirs-at-law of Willis A. Elliott, deceased, filed a motion in said partition proceeding for leave to become parties defendant thereto and to vacate the decrees for partition and for sale, alleging that the heirs-at-law of Willis A. Elliott, deceased, were not made parties defendant thereto and that the court did not have jurisdiction of all necessary and proper parties defendant. On February 14, 1950, the master in chancery of the court held a public sale of the property in question pursuant to the said decree of sale

and the same was sold to the plaintiffs herein as the highest and best bidders. The plaintiffs entered into possession of the premises on March 1, 1950, and have continued in possession, having paid the 1949 and 1950 taxes thereon and having accounted to no one for the rents and profits therefrom.

On September 1, 1950, an order was entered in said partition suit wherein it was found that Gretchen Lee Elam and Katherine Bottrell, as heirs-at-law of Willis A. Elliott, deceased, had no interest in any of the real estate in question and their motion to be made parties defendant and to vacate the decrees for partition and sale were denied. On January 21, 1951, deeds were issued to the plaintiffs herein for the real estate in question by the master in chancery pursuant to the partition sale.

On May 17, 1951, the purchasers at said partition sale, plaintiffs-appellees herein, filed an amended complaint alleging in substance the foregoing facts, that Kit Swiney Nell M. Rice, Gwen E. Kircher, and Stella Webb Albert, defendants-appellants, as the other heirs-at-law of Willis A. Elliott, deceased, claim an interest in the real estate, and praying that plaintiffs' title be quieted and the supposed interest of the heirs-at-law of Willis A. Elliott, deceased, be set aside and be declared void as a cloud on title of plaintiffs. Defendants' motion to dismiss the amended complaint was denied, whereupon an answer and counterclaim for partition and accounting of rents and profits was filed by the defendants-appellants. After a hearing the decree which resulted in this appeal was entered.

The errors assigned and relied upon for reversal are the trial court's denial of the motion to dismiss the amended complaint, dismissal of the counterclaim for partition and accounting, and entry of a decree quieting and removing cloud on title. Defendants-appellants argue first that the amended complaint is insufficient in that it failed to allege any instrument or written proceedings of record constitut-

ing a cloud on title or to contain any offer to do equity. Secondly, they argue that the surviving spouse having died intestate within ten months after issuance of letters of the estate of his deceased wife, and dower not having been perfected in the real estate owned by his deceased spouse, he inherited one-half thereof in fee, which descended to his heirs-at-law.

The plaintiffs were in possession of the property in question and in their complaint alleged that the heirs-at-law of Willis A. Elliott, the deceased surviving spouse of Louisa E. Elliott, were claiming ownership and title to the real estate in question as such heirs-at-law. Two of such heirs-at-law had previously unsuccessfully attempted to interplead in a partition suit and to assert a similar claim therein. An asserted claim of ownership and title arises by operation of law under the provisions of the Probate Act of 1940. It is well settled that equity will not take jurisdiction to remove a merely verbal assertion of ownership as a cloud on title (*McCarty* v. *McCarty,* 275 Ill. 573,) and it has been stated that a bill to quiet title applies only to instruments or other proceedings in writing which appear of record and cast doubt on the validity of the record title. (*Parker* v. *Shannon,* 121 Ill. 452.) However, an exception to the requirements of a writing of record exists in a case of an interest in land or an apparent interest therein arising by operation of law. (*Mostoller* v. *Liver,* 201 Ill. App. 52.) A removable cloud is created by setting up an assertion of rights of inheritance or by an assertion of a claim in a judicial proceeding. (*Shults* v. *Shults,* 159 Ill. 654; 44 Am. Jr., "Quieting Title," sec. 12, p. 13, Annotation, 78 A.L.R., p. 262.) The complaint herein sufficiently alleged a cloud on title.

From the facts alleged in the amended complaint here in question, the defendants-appellants had relinquished no property or money interests nor changed their position to their detriment or to the advantage of plaintiffs-appellees.

Consequently, there were no circumstances involved warranting an offer on the part of the complainants to reconvey or to tender back funds or to relinquish any interests they claimed. By the last clause of the plaintiffs' amended complaint it is prayed they may have such other and further relief in the premises as may be equitable and just, and, by the filing of said complaint in chancery and the prayer thereof, the plaintiffs submitted themselves to the equitable jurisdiction of the court and placed themselves in a position of being bound by whatever decree in chancery ultimately was entered by the court. Under the facts alleged in the complaint there was no act of equity for the plaintiffs to offer to perform, and this court will not, as a matter of pleading, require a complainant to offer to do or perform a useless or unnecessary act.

As to the second question, the basic issue to be determined is whether or not under sections 11, 18 and 19 of the Probate Act of 1940 (Ill. Rev. Stat. 1949, chap. 3, pars. 162, ·170, 171,) where an intestate leaves no child or children or their descendants but a surviving spouse and descendants of deceased brothers and sisters as sole heirs-at-law, a waiver of dower by the surviving spouse is a condition precedent to the vesting in such surviving spouse of an absolute one-half interest in fee in the real estate owned by the deceased spouse at the time of death.

Section 11 of the Probate Act of 1940 (Ill. Rev. Stat. 1949, chap. 3, par. 162,) which was in effect at all times here in question, provided in part as follows:

"The intestate real and personal estate of a resident decedent and the intestate real estate in this state of a nonresident decedent after all just claims against his estate are fully paid, descends and shall be distributed as follows:

\* \* \*

"Third, when there is no descendant but a surviving spouse and also a parent, brother, sister, or descendant of a brother or sister of the decedent: (a) to the surviving

spouse the entire personal estate and one-half of each parcel of real estate of which the decedent died seized and in which the surviving spouse does not perfect his right to dower in the manner provided in Section 19 hereof and (b) to the parents, brothers, and sisters of the decedent in equal parts one-half of each parcel of real estate in which the surviving spouse does not perfect his right to dower and, subject to the dower of the surviving spouse, all of each parcel of real estate in which the surviving spouse perfects his right to dower, allowing to the surviving parent, if one is dead, a double portion and to the descendants of a deceased brother or sister per stirpes the portion which the deceased brother or sister would have taken if living."

The dower rights of a surviving spouse and the manner of perfecting such rights in effect at the time here in question are set forth in sections 18 and 19, respectively, of the Probate Act of 1940 (Ill. Rev. Stat. 1949, chap. 3, pars. 170 and 171,) as follows:

"SEC. 170. DOWER. A surviving spouse, whether husband or wife, is endowed of a third part of all real estate of which the decedent was seized of an estate of inheritance at any time during the marriage, unless the dower has been released or is barred. * * *

"SEC. 171. PERFECTING RIGHT TO DOWER. The surviving spouse of a decedent who dies after the effective date of this Act is barred of dower unless he perfects his right thereto by filing during his lifetime at the time and place provided for herein a written instrument describing the real estate, signed by the surviving spouse, and declaring his intention to take dower therein.

"The time of filing the instrument shall be as follows: (a) within ten months after the death of the decedent if he dies intestate and letters of administration are not applied for within that period, (b) within ten months after the issuance of letters of administration if the decedent

dies intestate and the letters are applied for within ten months after his death, (c) within ten months after the admission of the will of the decedent to probate, or (d) within such further time as may be allowed by the probate court if, within ten months after such issuance of letters or after the admission of the will to probate or before the expiration of any extended period, the surviving spouse files a verified petition therefore setting forth that litigation is pending that effects the share of the surviving spouse in the estate.

"The place of filing the instrument shall be: (a) if the title to the real estate is not registered, in the office of the Recorder of Deeds of the county in which the real estate lies, or (b) if the title is registered, in the office of the Registrar of Titles in the county in which the real estate lies, in which event the instrument shall be entered as a memorial on the last certificate of title to the real estate. The instrument filed in the office of the Recorder of Deeds affects only non-registered real estate described in the instrument and located in the county in which the instrument is filed. The instrument filed in the office of the Registrar of Title affects only registered real estate described in the instrument and located in the county in which the instrument is filed."

In determining this basic issue we must ascertain the intent of the legislature as expressed in and found in the language used in the foregoing statutory provisions.

Prior to the adoption of the Probate Act of 1940 the rights of the parties in a situation such as this would have been governed by section 1 of the Descent Act (Ill. Rev. Stat. 1939, chap. 39, par. 1,) and by the Dower Act (Ill. Rev. Stat. 1939, chap. 41.)

The former Dower Act had no provisions equivalent to section 19 of the Probate Act of 1940 quoted above, with reference to intestate estates such as is herein involved, whereby dower was barred unless the surviving spouse

perfected his right thereto during his lifetime by filing a written declaration of intention to take dower in a certain manner and time specified. An entire new feature was introduced into the Illinois law of dower by the new Probate Act of 1940 when the legislature required the surviving spouse to perfect his right to dower *during his lifetime* or be barred thereof. The words "during his lifetime" do not appear in the previous Dower Act. Sections 11, 12 and 16 of the present Probate Act give the surviving spouse an interest in fee in real estate of which the decedent dies seized and "in which the surviving spouse does not perfect his right to dower in the manner provided in Section 19." Section 19 says that the dower may be perfected only if the surviving spouse files an instrument therefor "during his lifetime." It seems to us to follow from the language used that if, without perfecting dower, the surviving spouse dies within the period fixed therefor, dower has not been perfected during his or her lifetime so that the fee interest under sections 11, 12 and 16 of the Probate Act would continue in existence and pass to the heirs of the surviving spouse.

The Probate Act of 1940 passed by the General Assembly represented a comprehensive revision and consolidation of former statutes which dealt with both the substantive and procedural aspects of probate law. The bill for enactment of the Probate Act of 1940 was prepared at the instigation of the Illinois State Bar Association by a committee consisting of outstanding members of the Illinois bar, and subsequent to the adoption of the Probate Act a volume entitled "Illinois Probate Act Annotated" was prepared and published by said committee which purports to point out the source of each section in the new law and the changes in substantive and procedural law made by the new act. Although the interpretation put on the language used by such work is not controlling authority or precedent

as to what the language actually means, yet their observations are enlightening and persuasive. At page 34 of Illinois Probate Act Annotated, the authors, in commenting on the effect of death of surviving spouse within the period for perfecting dower, have the following to say: "The words 'during his lifetime' in the new section obviate a difficulty that was created by the language of the 1923 and 1925 amendments to the Descent and Dower Acts. Those amendments gave a fee interest in lieu of dower and provided that dower was waived and the fee interest obtained unless the surviving spouse filed an election to take dower within the one-year period fixed. The language did not clearly show what the legislature intended in the case of a surviving spouse who died within the year without indicating his or her intention. The Supreme Court decided [*Braidwood* v. *Charles*, 327 Ill. 500,] that in that case the surviving spouse had not elected to take the fee interest and received only dower, which was extinguished by death. The opposite result is reached in the new section by the use of the words 'during his lifetime.' Sections 11, 12 and 16 of the Probate Act give the surviving spouse an interest in fee in real estate of which the decedent died seized and 'in which the surviving spouse does not perfect his right to dower in the manner provided in section 19.' Section 19 says that dower may be perfected only if the surviving spouse files an instrument therefor 'during his lifetime.' If without perfecting dower the surviving spouse dies within the period fixed therefor, dower has not been perfected during his or her lifetime so that the fee interest given in sections 11, 12 and 16 has come into existence and will pass to the heirs or devisees of the surviving spouse."

The legislature at the time the Probate Act of 1940 was adopted knew that the Supreme Court under the former acts had decided in the case of *Braidwood* v. *Charles*

that death of the surviving spouse within the period for perfecting dower barred the fee interest. By the insertion of the words "during his lifetime" in the new section, we conclude that the legislature intended to avoid the difficulty that was created by the language of the former Descent and Dower Acts in not providing explicitly for the situation that herein exists.

Under the Descent and Dower acts existing prior to the adoption of the Probate Act of 1940, it was well established that the surviving spouse of an intestate who left no child or children or their descendants but a parent, brother, sister, or their descendants, was entitled as an heir-at-law to the entire personal estate and an absolute fee interest in one half of the real estate and, in addition thereto, dower in the remaining one-half of the real estate. (*Ness* v. *Lunde,* 394 Ill. 286; *Rossiter* v. *Soper,* 384 Ill. 47; *Sutton* v. *Read,* 176 Ill. 69; *Shoot* v. *Galbreath,* 128 Ill. 214.) In *Dial* v. *Dial,* 378 Ill. 276, we held that under the Probate Act of 1940 the surviving spouse under such circumstances may have one half of each parcel of real estate in fee or in the alternative may have dower in the entire tract, but that he or she is not entitled to both. The *Dial case* also involved whether or not the surviving widow was entitled to one half of a vested future interest her deceased spouse owned at the time of his death as being a parcel of real estate "of which the decedent died seized." In holding that the General Assembly used the word "seized" as meaning "owned" and not in its technical sense, the following observation was made as to the context of subsection 3 of section 11 of the new Probate Act: "Section 11 purports to make a complete disposition of an intestate's property, varying according to the closeness of the relationship of his heirs and even providing for an escheat to the county when he leaves no known kindred. The first sentence of the section states that 'the intestate real and personal estate' of a resident decedent should be

distributed in accordance with the provisions of that section, after providing the widow's share above quoted, recites that 'to the parents, brothers, and sisters of the decedent in equal parts one-half of each parcel of real estate in which the surviving spouse does not perfect his right to dower and, subject to the dower of the surviving spouse, all of each parcel of real estate in which the surviving spouse perfects his right to dower,' etc. By this language the parents, etc., are given only a one-half interest in the real estate, if there is no dower taken by the surviving spouse. If the contention of appellee were sustained, there would be an incomplete disposition of property under the section under this set of facts. The parents, etc., would take one-half, and no disposition of the other one-half would be provided. This seems to us a conclusive reason for holding that the General Assembly did not use the word 'seized' in its technical sense, but meant thereby the same as if it had used the word 'owned.' Otherwise, we would be compelled to hold that, since the Descent Act has been repealed, the other one-half would descend to those who, by the common law, would have been heirs, a result manifestly not intended by the legislature."

The same reasoning is applicable and in our opinion conclusive in the instant case. Section 11 purports to make a complete disposition of an intestate's property. Willis A. Elliott did not perfect his right to dower during his lifetime in the real estate here in question at the time or in the manner specified by the statutes. Thereby the sister and descendants of deceased brothers and sisters of Louisa E. Elliott took one half in fee of each parcel of real estate she owned at the time of her death under (b) of the third subsection of section 11 of the Probate Act. The surviving spouse, Willis A. Elliott, having failed to perfect his right of dower therein, the sister and other heirs of Louisa E. Elliott could not take "subject to the dower of the surviving spouse, all of each parcel of real estate in which the

surviving spouse perfects his right to dower." If the contention of the appellees were correct, the sister and nieces, nephews, etc., of Louisa E. Elliott would take only one half, there would be no disposition of the other half provided, and since the Descent Act has been repealed we would be compelled to hold that the other half would descend to those who by the common law would have been heirs. The legislature manifestly did not intend such a result and we are compelled to hold that the absolute fee title to one half of the real estate vested on the death of Louisa E. Elliott in her surviving husband, Willis A. Elliott, subject to being divested by his perfecting his right of dower therein.

Plaintiffs-appellees cite and quote extensively from the case of *Bruce* v. *McCormick,* 396 Ill. 482, in support of their contention as to the proper construction of the Probate Act of 1940. We there had in issue the effect of a surviving widow's quitclaim deed to a stranger in title within ten months of her spouse's death, a subsequent release of her interest within said period to certain of her deceased spouse's children and heirs, and her later warranty deed to a stranger in title. The *Bruce case* directly involved an interpretation of subsection 1 of section 11, and sections 18 and 19 of the Probate Act of 1940. The language of subsection 1 is substantially the same and cannot be distinguished from the language used in subsection 3 of section 11. We there held that failure of the surviving spouse to affirmatively waive dower was a condition precedent to the vesting of a one-third interest in fee in the surviving spouse where there are children or their descendants surviving. Language is used in the opinion of the *Bruce case* which would be highly persuasive of plaintiffs-appellees' position, even though in the *Bruce case* there was not involved the legal effect of death of the surviving spouse during the statutory period allowed for

perfecting dower. Notwithstanding the holding in that case, we are of the opinion that under sections 11, 18, and 19 of the Probate Act of 1940 where an intestate leaves no child or children or their descendants but a surviving spouse and descendants of deceased brothers and sisters as sole heirs-at-law, a waiver of dower by the surviving spouse is not a condition precedent to the vesting in such surviving spouse of an absolute one-half interest in fee in the real estate owned by the deceased spouse at the time of death, but that on the contrary the one-half interest in fee vested in such surviving spouse on death of the intestate subject to being divested by the election of the surviving spouse to take dower and perfection of such dower in the surviving spouse's lifetime, at the time and in the manner specified by the statutes.

Under the view we take of the provisions of the Probate Act of 1940 as applied to the facts of the present case, Willis A. Elliott, on the death of his wife, inherited an absolute fee interest in one half of all the lands she died seized of. Upon the death of Willis A. Elliott intestate within ten months of issuance of letters of administration on the estate of his deceased wife, not having perfected his right of dower therein, his fee interest in one half of said lands passed to his heirs-at-law.

It was error for the trial court to enter a decree quieting title and removing cloud on title in accordance with the amended complaint, and it was error for the trial court to dismiss the counterclaim for partition and accounting. The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*